**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIA PALOMA LEMUS PEREZ, | No.  1:26-cv-00064-DMC (HC) |
| Petitioner, | |
| v. | ORDER |
| TODD M. LYONS, et. al., | |
| Respondents. | |

Petitioner, an immigration detainee proceeding with counsel, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2241. Pursuant to the written consent of all parties, ECF Nos. 7 and 8, this case is before the undersigned judge for all purposes, including entry of a final judgment.  See 28 U.S.C. § 636(c); see also ECF No. 10 (consent order). Pending before the Court is Petitioner's motion for temporary restraining order, ECF No. 2. Respondents filed a response, ECF No. 5, and Petitioner filed a reply, ECF No. 9.

**I. BACKGROUND**

Petitioner is a Mexican citizen who entered the United States in October 2023. See ECF No. 2-2, pg. 8. According to Petitioner, she left Mexico "after a cartel leader attempted to murder her and forced her daughter into sexual servitude." Id. Petitioner was "apprehended at or near the border over two weeks after her initial entry to the United States."  ECF No. 9, pg. 2.

1

Then, Petitioner was "issued a Notice to Appear (NTA) charging her with removability under INA Section 212(a)(6)(A)(i) (non-citizen who is present without parole or inspection is inadmissible)." ECF No. 2-2, pg. 9. Petitioner filed an application for asylum, settled in the Los Angeles area with her children and subsequently became engaged to a U.S. citizen." Id. Petitioner contends that she has no criminal convictions. See id. at 10.  Respondents do not challenge this claim. See ECF No. 5.

On November 6, 2025, when reporting to ICE as instructed, Petitioner was detained by ICE. See ECF No. 2-2, pg. 2. While in detention, prior to filing a petition in this Court, Petitioner made a request to be released on bond, which was subsequently denied "based on the Immigration Judge's (IJ's) assertion that he lacks jurisdiction under Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025)." ECF No. 2-2, pg. 2.

## II. DISCUSSION

A temporary restraining order (TRO) is an extraordinary remedy. In general, "[t]emporary restraining orders are governed by the same standard applicable to preliminary injunctions." Aiello v. One West Bank, No. 2:10-cv-0227-GEB-EFB, 2010 WL 406092, at *1 (E.D. Cal. Jan. 29, 2010) (internal citations omitted); see also E.D. Cal. L.R. 231(a).

For both a TRO and a preliminary injunction, courts consider whether Petitioner has established: " [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the Winter test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the Winter elements using a sliding-scale approach. Id. A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Id. Simply put, Petitioner must demonstrate, "that [if]

2

serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in Petitioner's favor in order to succeed in a request for a TRO. Id. at 1134–35. The Court considers each of the Winter elements with respect to Petitioner's Motion.

### A.      Likelihood of Success on the Merits

Petitioner argues she is likely to succeed on her claim that, "[a]s a member of the Bond Eligible Class, Petitioner is entitled to consideration for release on bond under 8 U.S.C. § 1226(a)," ECF No. 1, pg. 7, because Petitioner's re-detention is punitive and occurred without notice and without a custody hearing, ECF No. 2-2, pgs. 16-20 (citing Bond Eligible Class certified in Maldonado Bautista v. Santacruz, No. 5:25-cv-01873-SSS-BFM, 2025 U.S. Dist. LEXIS 231977, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025)). Petitioner asserts that substantive due process requires that immigration detention "be justified by a sufficient purpose . . . either (1) dangerousness or (2) flight risk." ECF No. 2-2, pg. 11. Petitioner asserts she is "neither a danger nor a flight risk," she has no criminal convictions, and therefore her detention is not justified. See id. at 17.

Petitioner contends that the Department of Homeland Security (DHS) "explicitly acknowledged that individuals who have already entered the United States and are not apprehended within 100 miles of the border or within 14 days of entry are subject to discretionary detention under 8 U.S.C. § 1226(a), not mandatory detention under § 1225(b)" during oral arguments for Jennings v. Rodriguez. Id. at 13 (citing Transcript of Oral Argument at 7–8, Jennings v. Rodriguez, 583 U.S. 281 (2018) (No. 15-1204)). Thus, Petitioner argues that she is not subject to mandatory detention pursuant to § 1225(b)(2)(A), because she was "encountered in the interior of the country more than two weeks after entry." Id. at 16.

Respondents argue that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and is ineligible as a Bautista class member because Petitioner[1] "was apprehended upon her arrival in the United States." ECF No. 5, pgs. 1-2. Respondents contend

---

[1]      Respondents state that "Respondent was apprehended . . . Respondent concedes as much . . .," but cites to Petitioner's petition to support these assertions. Thus, the Court assumes Respondents meant to say Petitioner in those sentences.

3

that because Petitioner's petition and motion for TRO rely on Petitioner being a member of the Bautista class, her petition and motion should be denied. See id. at 2. Respondents assert that "even if [Petitioner's] release document cited 8 U.S.C. § 1226," Petitioner still has not been admitted and therefore is subject to § 1225(b)(2)(A). Id. Thus, Respondents assert that because Petitioner is "subject to mandatory detention under § 1225(b)(2)(A), Respondents assert that ICE has the discretion to re-detain Petitioner at any time." Id.

### 1.    Bautista Class Eligibility

In Bautista, the District Court certified a nationwide Bond Eligible Class, defined as: "[a]ll noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival;  and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." Bautista v. Santacruz, No. 5:25-cv-01873-SSS-BFM, 2025 LX 563862, at *26-27 (C.D. Cal. Nov. 25, 2025). The following month, the District Court declared that Bond Eligible Class members are: "detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under §1225(b)(2) . . . and are entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge." Bautista v. Santacruz, No. 5:25-cv-01873-SSS-BFM, 2025 LX 523334, at *88 (C.D. Cal. Dec. 18, 2025).

Though Respondents argue the Petitioner is not a member of the class because she was apprehended when she arrived, it appears Respondents solely rely on the language in Petitioner's petition to support that claim. See ECF No. 5, pg. 2 (quoting ECF No. 2-2, pg. 9) ("[Petitioner] was apprehended upon her arrival in the United States. [Petitioner] concedes as much, stating in her motion for a temporary restraining order that she 'was apprehended after her entry and issued . .'").  In her reply, Petitioner clarified that she was "apprehended at or near the border over two weeks after her initial entry to the United States."  ECF No. 9, pg. 2. Given that Respondents' argument relies on Petitioner's representation, and Petitioner clarified in the Reply that Petitioner was apprehended over fourteen days after her arrival, the Court finds Petitioner has established a strong likelihood of success in showing she is a member of the Bautista Bond Class

4

and therefore entitled to the status afforded to class members in Bautista v. Santacruz, No. 5:25-cv-01873-SSS-BFM, 2025 LX 523334 (C.D. Cal. Dec. 18, 2025).

### 2. Due Process

Given Respondents' challenges to Petitioner's class membership, the Court will additionally consider the likelihood of success on the merits of Petitioner's due process claims, assuming arguendo that Petitioner is not eligible for class membership.

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. Hernandez v. Session, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. Id. at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). The Court considers each step in turn.

### a. *Liberty Interest*

Respondents argue that because Petitioner is subject to mandatory detention pursuant to §1225(b)(2), which the Court will address in the following section, "ICE has the discretion to re-detain Petitioner at anytime." ECF NO. 5, pg. 2. This Court disagrees and finds Petitioner has shown she has a protectable liberty interest. See Morrissey, 408 U.S. at 482. "Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."

5

Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). "Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." Id. (quoting Morrissey, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody." Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." R.D.T.M. v. Wofford, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Sections 1225 and 1226 both govern the detention and removal of noncitizens from the United States. However, § 1225 provides for mandatory detention of certain individuals, while § 1226 establishes a discretionary detention scheme. Section 1225 provides that a noncitizen "who is an applicant for admission . . . shall be detained." 8 U.S.C. § 1225(b)(2)(A). In contrast, under Section 1226's discretionary scheme, a noncitizen "may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C § 1226(a). Pending this decision, the Attorney General may continue to detain the arrested individual or may release the individual on bond or conditional parole. 8 U.S.C § 1226(a)(2)(A)–(B). Section 1226(a) affords noncitizens a statutory right to a bond hearing before an immigration judge. Rodriguez v. Bostock, 779 F. Supp. 3d 1239, 1256 (W.D. Wash. 2025)[2] (citing 8 C.F.R. §

---

[2]    Respondents assert that because this case, Bostock, is pending Ninth Circuit appeal, and "the issues in [Bostock] are likely to be dispositive of the issues in this case, Respondents ask that any further briefing deadline be held in abeyance until the resolution of the [Bostock]case." ECF No. 5, pgs. 2-3. To the extent that Respondents seek to delay briefing on the merits due to this appeal, the Court will consider such a delay should Respondents file a motion to that effect. Additionally, Respondents contend that their opposition to the TRO is substantively the same as their opposition to the petition itself, and therefore their opposition to the TRO "contains the entirety of the Respondents' opposition to both forms of relief." Id. at 2, n. 1. However, "a request for affirmative relief is not proper when raised for the first time in an opposition." Smith v.

6

1236.1(d)); see also Rodriguez Diaz v. Garland, 53 F.4th 1189, 1197 (9th Cir. 2022) (concluding that under "§ 1226(a) and its implementing regulations, a detainee may request a bond hearing before an IJ at any time before a removal order becomes final"). "At that hearing, the noncitizen may present evidence of their ties to the United States, lack of criminal history, and other factors that show they are not a flight risk or danger to the community." Bostock, 779 F. Supp. 3d at 1256.

This Court agrees with Petitioner that she is likely subject to § 1226(a)'s discretionary detention scheme rather than § 1225(b)(2)'s mandatory detention scheme and, therefore, is entitled to a bond hearing. Respondents argue Petitioner is an applicant for admission, and therefore subject to mandatory detention under § 1225(b)(2). See ECF No. 5, pg. 1. This argument reflects a recent executive branch policy change directing federal immigration officials to seek expedited removal of a larger swath of noncitizens by classifying all noncitizens present in the United States as "applicant[s] for admission" under § 1225. C.A.R.V. v. Wofford, No. 1:25-cv-01395-JLT-SKO, 2025 WL 3059549, at *5 (E.D. Cal. Nov. 3, 2025) (quoting Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC, 2025 WL 2637503, at *1–4 (N.D. Cal. Sept 12, 2025), describing this policy change).

This Court rejects Respondents' argument and finds that the applicability of these provisions is governed by when and where a noncitizen encounters immigration enforcement officials. Courts in this Circuit have found that § 1225 applies to those apprehended upon arrival to the United States while § 1226 applies to those already living within the United States. See, e.g., Bostock, 779 F. Supp. 3d at 1257 (finding petitioner likely to succeed on merits of argument that 1225(b)(2)(A) "should be read to narrow mandatory detention under that subsection to noncitizens who are apprehended while seeking to enter the country, and that noncitizens already residing in the United States, including those who are charged with inadmissibility, continue to fall under the discretionary detention scheme in Section 1226") (internal quotation marks omitted); J.A.C.P. v. Wofford, No. 1:25-cv-01354-KES-SKO-HC, 2025 WL 3013328, at *6–7

Premiere Valet Servs., Inc., No. 2:19-cv-09888-CJC-MAA, 2020 WL 7034346, at *14 (C.D. Cal. Aug. 4, 2020) (internal citations omitted); see (citing Fed. R. Civ. P. 7(b)(1); L.R. 230(b)).

(E.D. Cal. Oct. 27, 2025). This interpretation of these provisions is further supported by the amendments made by the Laken Riley Act, recent Supreme Court analysis of the statutory scheme, and longstanding agency practice.

Respondents' proposed interpretation of the statute disregards the relationship between §§ 1225 and 1226 and would render the recent amendment to § 1226(c) superfluous. See Lepe v. Andrews, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025). Specifically, in 2025 Congress enacted the Laken Riley Act, which added additional categories of individuals to those subject to mandatory detention under Section 1226(c). As many courts have discussed in length, if every "applicant for admission" is subject to mandatory detention under § 1225, there would have been no need for § 1226(c)(1)(E), which mandates detention for every noncitizen who is "present in the United States without being admitted or paroled" and who has been "charged with, arrested for, or admits to" committing certain crimes. 8 U.S.C. § 1226(c)(1)(E); Maldonado v. Olson, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *12 (D. Minn. Aug 19, 2025) ("The Court will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2)."); Garcia v. Noem, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *6 (S.D. Cal. Sept. 3, 2025) (explaining that "assuming any inadmissible noncitizen is an 'applicant for admission' who is 'seeking admission' and, therefore, subject to mandatory detention under § 1225(b)(2)), would render the Riley Laken Act unnecessary").

Additionally, this interpretation of the statute is consistent with the Supreme Court's recent description of these provisions in Jennings v. Rodriguez, 583 U.S. 281 (2018). In Jennings, the Supreme Court explained that "U.S. immigration law authorizes the Government to detain certain [noncitizens] seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain [noncitizens] already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." Id. at 289. The Supreme Court described proceedings under Section 1225 as a process that "generally begins at the Nation's borders and ports of entry, where the government must determine whether a [noncitizen] seeking to enter the country is admissible." Jennings, 583 U.S. at 287. "Then, when discussing Section

1226, Jennings describes it as governing 'the process of arresting and detaining' noncitizens who are living 'inside the United States' but 'may still be removed,' including noncitizens 'who were inadmissible at the time of entry.'" Bostock, 779 F. Supp. 3d at 1258 (quoting Jennings, 583 U.S. at 288).

Next, this Court's interpretation is consistent with longstanding agency practice. Indeed, prior to a July 2025 memorandum changing its' policy, the government consistently applied Section 1226(a), not Section 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal. See Rodriguez Diaz, 53 F.4th at 1196 (concluding that "§1226 provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal."). " Executive Branch regulations implementing these provisions issued just six months after their enactment provide that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) will be eligible for bond and bond determination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). As this interpretation "was issued roughly contemporaneously with the enactment of the statute and remained consistent over time," this "longstanding practice of the government—like any other interpretive aid —can inform a court's determination of what the law is." Loper Bright Enters. v. Raimondo, 603 U.S. 369, 386 (2024) (cleaned up).

This Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting Respondents' interpretation of Sections 1225 and 1226. See Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting more than thirty cases rejecting the government's assertion that § 1225 empowers the DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v. Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of

Immigration Appeals'] construction of the INA is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at *3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful."); but see Alonzo v. Noem, No. 1:25-cv-01519 WBS SCR, 2025 LX 597162 (E.D. Cal. Nov. 17, 2025)).

Further, this interpretation is consistent with the record here. Courts have concluded "[f]or [§1225] to apply, several conditions must be met — in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted." Martinez v. Hyde, No. CV 25-11613- BEM, 2025 WL 2084238, at *2 (D. Mass. July 24, 2025). There is no evidence in the record that an immigration officer made the requisite determinations for § 1225 to apply or that Petitioner is seeking admission and **not** clearly and beyond a doubt entitled to be admitted. Following and adopting the reasoning of other courts, this Court finds Petitioner is not actively seeking lawful entry because he already entered the United States over two years ago. See Salcedo Aceros, 2025 WL 2637503, at *8 (collecting cases concluding that § 1225 applies only to noncitizens "seeking admission," a category that does not include noncitizens like Petitioner, living in the interior of the country.).

Finally, Respondents never explain how and why, if Petitioner's detention is mandatory and he is ineligible for a custody redetermination, Petitioner was previously released after being taken into custody, which would have presumably required a custody redetermination. Respondent's claim that Petitioner's detention is mandatory and ineligible for a custody redetermination is inconsistent with the record. Thus, the record supports this Court's interpretation.

10

For these reasons, this Court rejects the government's contention that Petitioner is an "applicant for admission" subject to § 1225(b)(2) and that because Petitioner has been present in the United States for over two years, ECF No. 2-2, pg. 8, this Court finds she is likely to succeed on the merits of her claim that she is unlawfully detained under Section 1225(b)(2)'s mandatory detention provision. See J.A.C.P., 2025 WL 3013328, at *7 (finding Petitioner was likely to succeed on the merits of their claim that they were not subject to mandatory detention under section 1225(b)(2)(A) under similar circumstances); Bostock, 779 F. Supp. 3d at 1261 (same).

Moreover, Petitioner was released from immigration detention, which created a reasonable expectation that she would be entitled to retain his liberty absent a material change in circumstances. Petitioner's detention, and Respondents assertion that ICE has discretion to re-detain Petitioner at any time, goes against United States Supreme Court precedent which recognizes that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued release. See Morrissey, 408 U.S. 471 at 482. Therefore, Petitioner is likely to succeed on the merits of his claim that he is subject to the procedures laid out by and entitled to the rights afforded under § 1226(a), most notably, a bond hearing.

## B.    Irreparable Harm

Petitioner argues she will suffer irreparable harm were she to remain deprived of her liberty and subjected to continued incarceration. ECF No. 2-2, pgs. 8-9. Specifically, Petitioner contends she is being detained under the wrong statute, has been denied the procedures Congress provided under § 1226, and has been deprived of a hearing, despite more than two years of perfect compliance with the conditions of her release and no criminal convictions. See id. Petitioner also argues she faces indefinite detention in violation of Due Process and that her prior release "constitutes a binding judgment for purposes of collateral estoppel and cannot be disturbed absent materially changed circumstances or new facts." Id. at 16-17.  Respondents assert that because Petitioner is subject to mandatory detention, "ICE has the discretion to re-detain Petitioner at any time." ECF No. 5, pg. 2. Though not explicitly stated, the Court assumes

that Respondents mean that such discretion does not require any change in circumstances, such as violation of terms of release or conviction of a crime. Respondents make no argument as to Petitioner's alleged harms of being detained. See ECF No. 5.

The Court finds Petitioner will suffer irreparable harm in the absence of preliminary injunctive relief. Prior to her re-detention, Petitioner had been out of custody for over two years, during which time Petitioner appears to have made meaningful connections with her community. See ECF No. 2-2, pg. 10 ("Petitioner settled in the Los Angeles area with her children and subsequently became engaged to a U.S. citizen.")  Despite being released on parole, Petitioner was re-detained without the opportunity to be heard by a neutral adjudicator on whether re-detention is warranted. This violation of Petitioner's due process rights is sufficient to satisfy the irreparable harm requirement. Doe v. Becerra, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025).

**C.      Balance of Equities and Public Interest**

As to the final two Winter factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." Nat'l Urban League v. Ross, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing Drakes Bay Oyster Co. v. Jewell, 747 F.3d 1073, 1092 (9th Cir. 2014)).

The Court finds the balance of equities and public interest weighs in Petitioner's favor given that the Court has found that Petitioner has a strong likelihood of success on the merits and Respondent's lack of irreparable harm. Rodriguez v. Robbins, 715 F. 3d 1127, 1145 (9th Cir. 2013) ("[The Government] cannot suffer harm from an injunction that merely ends an unlawful practice . . . ").

Therefore, the Court GRANTS Petitioner's motion for a temporary restraining order, ECF No. 2.

/ / /

/ / /

/ / /

/ / /

### III. CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1.    Petitioner's Motion for a Temporary Restraining Order, ECF No. 2, is GRANTED.

2.    Respondents must IMMEDIATELY RELEASE Petitioner Maria Paloma Lemus Perez from custody under the same conditions as she was released previously, prior to her re-detention. Respondents shall not impose any additional restrictions on her, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

3.    Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including notice and a hearing before a neutral fact-finder where Respondents show: (a) there are material changed circumstances which demonstrate that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have his counsel present.

4.    Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the Temporary Restraining Order on two days' notice or such shorter notice as the Court may allow. Fed. R. Civ. P. 65(b)(4).

5.    The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. See Diaz v. Brewer, 656 F.3d 1008, 1015 (9th Cir. 2011).

Dated:  January 20, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

13